IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER R. McCAULEY,           )
                                   )
            Plaintiff,             )
                                   )
       v.                          ) Civil Action No. 09-117J
                                   )
MICHAEL J. ASTRUE,                 )
COMMISSIONER OF                    )
SOCIAL SECURITY,                   )
                                   )
            Defendant.             )

## MEMORANDUM JUDGMENT ORDER

AND NOW, this 20th day of September, 2010, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 11) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 9) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Importantly, where the ALJ's findings of fact are

supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff protectively filed his pending applications[1] for disability insurance benefits and supplemental security income on January 11, 2006, alleging a disability onset date of September 30, 2005, due to a right elbow impairment and a right knee impairment. Plaintiff's applications were denied initially. At plaintiff's request an ALJ held a hearing on December 7, 2007, at which plaintiff, represented by counsel, appeared and testified. On February 26, 2008, the ALJ issued a decision finding that plaintiff is not disabled. On February 25, 2009, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 36 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §§404.1563(c) and 416.963(c). He has an eleventh grade education which is classified as limited. 20 C.F.R. §§404.1564(b)(3) and 416.964(b)(3). Plaintiff has past relevant

---

[1] For purposes of plaintiff's Title II application, the ALJ found that plaintiff met the disability insured status requirements of the Act on his alleged onset date and had acquired sufficient coverage to remain insured through March 31, 2008.

work experience as a deep fat fryer, stock laborer, service station attendant, kitchen helper, small engine mechanic and snowplow driver, but he has not engaged in any substantial gainful activity since his alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe elbow impairment of post-traumatic degenerative joint disease with the residual effects of arthroplasty and low grade carpal tunnel syndrome, that impairment does not meet or equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P. The ALJ further found that plaintiff's knee impairment is not severe because it does not result in any work-related functional limitations that can be expected to last for a continuous period of at least 12 months.

The ALJ also found that plaintiff retains the residual functional capacity to perform work at the medium exertional level but with certain restrictions recognizing the limiting effects of his elbow impairment. (R. 18). Relying on the testimony of a vocational expert, the ALJ concluded that plaintiff is capable of performing his past relevant work of deep fat fryer, stock laborer and kitchen helper in light of his age, education, work experience

and residual functional capacity.[2] Accordingly, the ALJ determined that plaintiff is not disabled.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(1)(B) and 1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process[3] for determining whether a claimant is under a disability. 20 C.F.R. §§404.1520 and 416.920; Newell v. Commissioner of Social Security, 347 F.3d 541,

---

[2] The ALJ further noted that the vocational expert had also identified numerous other jobs which an individual of plaintiff's age, education, work experience and residual functional capacity could perform at the light and sedentary exertional levels, including box bender, mold filler, folder, garment sorter, nut sorter and document preparer. (R. 23).

[3] The ALJ must determine in sequence: (1) whether the claimant currently is engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1520 and 416.920.

545 (3d Cir. 2003). If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff raises several challenges to the ALJ's findings: (1) the ALJ improperly concluded that plaintiff does not have any limitations arising from his knee impairment; (2) the ALJ improperly concluded that plaintiff has no significant limitations resulting from his elbow impairment; and, (3) the ALJ improperly dismissed the opinion of plaintiff's treating orthopedic surgeon. Upon review, the court is satisfied that the ALJ properly evaluated the evidence and that the ALJ's finding of not disabled is supported by substantial evidence.

Plaintiff's first argument is that the ALJ improperly concluded that plaintiff has no limitations from his knee impairment. However, plaintiff is misconstruing the ALJ's finding.

The record shows that in September of 2007, plaintiff reported to his physician that he could not run without his right knee giving out. The following month, on October 18, 2007, he underwent surgery for an ACL reconstruction. His orthopedic surgeon, Dr. Ellis, reported that he expected plaintiff to fully recover within 7 to 9 months. (R. 257).

Subsequent evidence shows that plaintiff's knee improved significantly after the surgery. On November 19, 2007, only one month post-surgery, Dr. Ellis stated that while plaintiff could not work "while recovering from surgery", he also noted that

plaintiff's pain would "not prevent [him] from functioning in every day activities of work." (R. 169). By December 11, 2009, less than two months after surgery, Dr. Ellis opined that plaintiff's knee was "rock-solid" and that he could work "as tolerated." (R. 171).

Contrary to plaintiff's argument, the ALJ did not find that plaintiff did not have *any* limitations resulting from his knee impairment and surgery, rather he found that any such limitations would not be expected to last longer than seven to nine months, as estimated by plaintiff's surgeon and confirmed by plaintiff's rapid recovery post-surgery. As already noted, disability under the Act requires the inability to engage in substantial gainful activity by reason of an impairment "which can be expected to last for a <u>continuous</u> period of <u>at least twelve months</u>." 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). (emphasis added). The ALJ adequately explained in his decision the rationale behind this determination and his finding is supported by substantial evidence. (R. 17).

To the extent plaintiff now suggests that his knee impairment became "a significant problem" by December of 2006, and thus lasted for a period of at least twelve months, this suggestion is belied by the record. Although an MRI in December of 2006 showed a small ligament tear in plaintiff's right knee, he sought no additional treatment for any knee problem until September of 2007, when he reported that he could not run without his knee giving out.

AO 72
(Rev. 8/82)

Importantly, at no time prior to September of 2007 did any physician suggest that plaintiff had any sort of functional limitations related to his knee, and plaintiff sought no treatment for any knee impairment until then. It is well settled that disability is not determined merely by the presence of impairments, but by the effect that those impairments have upon an individual's ability to perform substantial gainful activity. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). Here, even though the December 2006 MRI did show a small tear, there simply is no evidence in the record that plaintiff was limited in any way by a knee impairment before September of 2007. Accordingly, the court finds no error in the ALJ's finding.

Plaintiff's second argument, that the ALJ wrongly concluded that plaintiff does not have any significant limitations relating to his elbow, also is not supported by the record. The ALJ found plaintiff's elbow impairment to be severe at step 2, and, to the extent that impairment impacts plaintiff's ability to work, the ALJ accommodated it in his residual functional capacity finding at step 4. (R. 18). Furthermore, plaintiff has not suggested any additional restrictions arising from his elbow problem that would be more limiting than those already accounted for in the ALJ's residual functional capacity finding, and the record does not support any additional limitations.

The record shows that plaintiff first sought treatment for pain in his right elbow in April of 2006, six months after his alleged onset date, and underwent a right elbow arthroscopy by Dr.

Ellis in May of 2006. (R. 126-27). A month later, his elbow "look[ed] great" with no redness or warmth and only mild swelling. (R. 139). Plaintiff was instructed to attend physical therapy but plaintiff was discharged in June of 2006 for noncompliance. (R. 185-201, 256). Plaintiff returned to Dr. Ellis in August of 2006 and reported his elbow was "much better." (R. 179). Plaintiff reported generalized discomfort in the elbow in September of 2007 and underwent a cortisone injection in October of 2007 (R. 173-174).

In short, plaintiff cannot point to any medical or other evidence in the record which would support additional limitations arising from his elbow impairment that the ALJ did not already account for in his residual functional capacity finding. The court is satisfied that the ALJ's analysis of plaintiff's elbow impairment also is supported by substantial evidence.

To the extent plaintiff relies on his own complaints of "continuous pain" in the elbow with swelling rendering his arm "useless" for as long as two or three days, the ALJ considered plaintiff's subjective complaints in light of the medical evidence, plaintiff's treatment history, activities of daily living and all of the other evidence of record and found that plaintiff's subjective complaints of debilitating pain and limitations were inconsistent with the totality of the evidence. (R. 20). The ALJ thoroughly explained his credibility finding in his decision and that finding is supported by substantial evidence.

AO 72
(Rev. 8/82)

- 8 -

Plaintiff's remaining argument is that the ALJ improperly dismissed an opinion from plaintiff's treating orthopedic surgeon, Dr. Ellis, suggesting that plaintiff is unable to perform even sedentary work. (R. 168). The court finds no error in the ALJ's evaluation of this report.

First, Dr. Ellis completed the form at issue in November of 2007, only one month after plaintiff's knee surgery. When asked if plaintiff could perform sedentary work, Dr. Ellis checked "no" but also added "not at this time while recovering from surgery." Thus, at most, Dr. Ellis rendered an opinion that plaintiff was temporarily disabled as of November of 2007. However, as already discussed, disability under the Act requires the inability to engage in substantial gainful activity by reason of an impairment "which can be expected to last for a <u>continuous</u> period of <u>at least twelve months</u>." 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). (emphasis added). In addition, as the ALJ correctly emphasized, the ultimate determination of disability under the social security regulations is for the Commissioner and the opinion of any medical source on that determination never is entitled to special significance. 20 C.F.R. §§404.1527(e) and 416.927(e); SSR 96-5p.

Finally, any suggestion that plaintiff is permanently disabled simply is not supported by the medical evidence, as discussed by the ALJ in his decision. (R. 22). In fact, Dr. Ellis himself reported in the same November 2007 report that although "pain is present" it would not prevent plaintiff from "functioning in every day activities of work." (R. 169). And one

month later, in December of 2007, Dr. Ellis reported that plaintiff could work "as tolerated." (R. 171). Accordingly, any suggestion that plaintiff is permanently disabled that could be gleaned from Dr. Ellis' report is inconsistent with all of the other medical evidence of record, including Dr. Ellis' own treatment notes.

The ALJ did a thorough job in his decision in setting forth the relevant medical evidence and explaining why he gave no probative weight to the suggestion that plaintiff cannot perform even sedentary work. The court has reviewed the ALJ's decision and the record as a whole and is convinced that the ALJ's evaluation of the medical evidence is supported by substantial evidence in the record.

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

cc: Larry D. Lashinsky, Esq.
    Rea, Rea & Lashinsky
    415 Wayne Street
    P.O. Box 487
    Hollidaysburg, PA 16648

    Stephanie L. Haines
    Assistant U.S. Attorney
    319 Washington Street
    Room 224, Penn Traffic Building
    Johnstown, PA 15901